Slip Op. 13- 37

UNITED STATES COURT OF INTERNATIONAL TRADE

RIDDELL, INC.,

                Plaintiff,

                v.

UNITED STATES,

                Defendant.

Before: Judith M. Barzilay, Senior Judge

Consol. Court No. 09-00416

**OPINION**

[On classification of certain football jerseys, pants, and girdle shells, summary judgment granted for Defendant; summary judgment denied for Plaintiff.]

March 20, 2013

    *Daniel J. Gluck*, *Christopher M. Kane*, *Joel K. Simon*, *Scott Zarin*, and *Mariana del Rio Kostenwein*, Simon Gluck & Kane LLP, of New York for Plaintiff Riddell, Inc.

    *Marcella Powell*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY for Defendant United States.  With her on brief was *Alexander Vanderweide*, Trial Attorney.  Also with her on the brief were *Stuart F. Delery*, Principal Deputy Assistant Attorney General, and *Barbara S. Williams*, Attorney in Charge.  Of counsel was *Michael Heydrich*, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of New York.

    BARZILAY, Senior Judge:  This consolidated case is before the court on cross-motions for summary judgment.  Plaintiff Riddell, Inc. ("Riddell"), challenges the decision of Defendant U.S. Customs and Border Protection ("Customs") denying Riddell's protest of Custom's classification of its football pants, jerseys, and girdle shells within the Harmonized Tariff Schedule of the United States ("HTSUS").  Customs classified the subject merchandise as "articles of apparel" and rejected Riddell's proposed classification of the merchandise as "sports

equipment."  More specifically, Customs classified (1) the football pants in Court No. 07-00413

under subheading 6114.30.30 of the HTSUS, which carries a 14.9% *ad valorem* duty; the

football pants in Court No. 09-00416 under subheading 6203.43.40 of the HTSUS, which carries

a 27.9% *ad valorem* duty; (2) the football jerseys under subheading 6110.30.30 of the HTSUS,

which carries a 32% *ad valorem* duty; and (3) the football girdles under subheading 6207.19.90

of the HTSUS, which carries a 10.5**%** *ad valorem* duty.  Plaintiff, however, claims that all the

merchandise is properly classified under subheading 9506.99.20 of the HTSUS, which is duty

free.[1]  The court has jurisdiction pursuant to 28 U.S.C. § 1581(a).  For the reasons set forth

below, Defendant's motion for summary judgment is granted and Plaintiff's motion is denied.

## I. STANDARD OF REVIEW

The court reviews Customs' protest decisions *de novo.* 28 U.S.C. § 2640(a)(1).  USCIT

Rule 56 permits summary judgment when "there is no genuine dispute as to any material

fact . . . ." USCIT R. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In considering whether material facts are in dispute, the evidence must be considered in a light

most favorable to the non-moving party, drawing all reasonable inferences in its favor, as well as

all doubts over factual issues. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157

(1970); *Anderson,* 477 U.S. at 253-54.

A classification decision involves two steps.  The first addresses the proper meaning of

the relevant tariff provisions, a question of law.  *See Faus Group, Inc. v. United States,* 581 F.3d

---

[1] Riddell abandoned its claims with respect to "scrimmage vests," Pl. Br. 13, and "padded
football girdles." *See* Notice of Withdrawal of Arguments and References to Padded Football
Girdles, ECF Docket Entry No. 52 (Sept. 14, 2012).

1369, 1371-72 (Fed. Cir. 2009) (citing *Orlando Food Corp. v. United States,* 140 F.3d 1437, 1439 (Fed. Cir. 1998)).  The second step determines the nature of the imported merchandise and is a question of fact. *See id.*  When there is no factual dispute regarding the merchandise, as is the case here, the resolution of the classification issue turns on the first step, determining the proper meaning and scope of the relevant tariff provisions. *See Carl Zeiss, Inc. v. United States,* 195 F.3d 1375, 1378 (Fed. Cir. 1999); *Bausch & Lomb, Inc. v. United States,* 148 F.3d 1363, 1365-66 (Fed. Cir. 1998).

While the court accords deference to Customs' classification rulings relative to their "power to persuade," *United States v. Mead Corp.,* 533 U.S. 218, 235 (2001) (citing *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944)), the court has "an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms." *Warner-Lambert Co. v. United States,* 407 F.3d 1207, 1209 (Fed. Cir. 2005) (citing *Rocknel Fastener, Inc. v. United States,* 267 F.3d 1354, 1358 (Fed. Cir. 2001)).

## II. UNDISPUTED FACTS

The following facts are not in dispute.  Riddell's football pants are made of polyester (and spandex) and include only youth (12 or 13 years old) sizes.  They include game and practice pants.  They contain four interior sleeves specifically designed to hold in place two thigh pads and two knee pads.  The pants are also designed to hold in place (around a football player's waist) two hip pads and one tail pad.  As imported, though, the pants do not contain pads or padding.  They have an open crotch (laced-closed with heavy strings), prominent inside stitching, and fall just below the knee area.  Tight elastic closures maintain a close fit under the knee.  The

pants are cut larger to accommodate the insertion of padding and other protective articles such as an athletic cup.

Riddell's football jerseys are made of knit mesh (100% polyester), with a V-shaped neck opening, elasticized short sleeves and hemmed bottom.  They include both youth and adult sizes. The jerseys are constructed with extra room in the shoulders, chest, and back to accommodate shoulder pads. The jerseys hold the shoulder pads snugly to the upper body. They also have substantial stitching and extra material at the shoulders to maintain the integrity of each jersey during full-contact organized football. As imported, the jerseys do not contain shoulder pads or other padding.

Riddell's football girdles (shells) are made of polyester and contain several internal pad sleeves for insertion of hip and tail pads.  The girdles fit snugly around the pelvic area and are worn underneath football pants.  As imported, the girdle shells do not contain padding.

### III. DISCUSSION

The "General Rules of Interpretation ("GRIs") govern classification of merchandise under the HTSUS, and are applied in numerical order." *Honda of Am. Mfg. v. United States*, 607 F.3d 771, 773 (Fed. Cir. 2010) (internal quotations and citations omitted).  "What is clear from the legislative history of the World Customs Organization ("WCO") and case law is that GRI 1 is paramount." *Telebrands Corp. v. United States*, 36 CIT __, __, 865 F. Supp. 2d 1277, 1280 (2012).  When determining the correct classification for merchandise, a court first construes the language of the headings in question, in light of any related section or chapter notes. *See* GRI 1; *Faus Grp., Inc.*, 581 F.3d at 1372 (citing *Orlando Food Corp.*, 140 F.3d at 1440).  Similarly,

GRI 6 states that "classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related notes and, *mutatis mutandis*, to the above rules." GRI 6.  The "terms of the HTSUS are construed according to their common commercial meanings." *Millenium Lumber Distrib. Ltd. v. United States*, 558 F.3d 1326, 1329 (Fed. Cir. 2009).  To ascertain the common commercial meaning of a tariff term, the court "may rely on its own understanding of the term as well as lexicographic and scientific authorities." *Len-Ron Mfg. Co. v. United States,* 334 F.3d 1304, 1309 (Fed. Cir. 2003).  The court may also refer to the Harmonized Description and Coding System's Explanatory Notes ("Explanatory Notes") "accompanying a tariff subheading, which–although not controlling–provide interpretive guidance." *E.T. Horn Co. v. United States,* 367 F.3d 1326, 1329 (Fed. Cir. 2004) (citing *Len-Ron,* 334 F.3d at 1309).

The dispute in this case concerns whether Riddell's football pants, jerseys, and girdle shells are properly classified as "articles of apparel" under HTSUS Chapters 61 and 62 or "sports equipment" under the HTSUS Chapter 95.  The pertinent parts of Chapters 61, 62 and 95 of the HTSUS provide:

> 6110 Sweaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted:
> 6110.30        Of man-made fibers:
> 6110.30.30                Other …………………..………… 32%
>
>                        *        *        *
>
> 6114 Other garments, knitted or crocheted:
> 6114.30        Of man-made fibers:
> 6114.30.30                Other: ……………………………… 14.9%
>
>                       *        *        *

> 6212 Brassieres, girdles, corsets, braces, suspenders, garters and similar articles and parts thereof, whether or not knitted or crocheted:
> 6212.20.00      Girdles and panty-girdles ………………….. 20%
>
>           *        *        *
>
> 9506 Articles and equipment for general physical exercise, gymnastics, athletics, other sports (including table-tennis) or outdoor games, not specified or included elsewhere in this chapter; swimming pools and wading pools; parts and accessories thereof:
> 9506.99      Other:
> 9506.99.20                    Football, soccer and polo articles and equipment, except balls, and parts and accessories thereof ……………… Free

HTSUS subheadings 6110.30.30, 6114.30.30, 6212.20.00, 9506.99.20.  The subheadings are *eo nomine* provisions, or more simply, provisions "that describe[] an article by a specific name, not by use." *Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1312 (Fed. Cir. 2012) (citing *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011)); *see also HIM/Fathom, Inc. v. United States*, 21 CIT 776, 783, 981 F. Supp. 610, 617 (1997) ("[T]he garment provisions involved, Chapters 61 and 62, are not use provisions.").  Absent limiting language or contrary legislative intent, an *eo nomine* provision covers all forms of the named article.  *Nidec Corp. v. United States*, 68 F.3d 1333, 1336 (Fed. Cir. 1995).

Plaintiff argues that the subject merchandise "must be classified under HTSUS 9506, based upon . . . *Bauer Nike Hockey USA, Inc. v. United States*, 393 F.3d 1246 (Fed Cir. 2004) ("[*Bauer*]"), where hockey pants used in competitive sports with both removable and non-removable belt and padding were classified by the Court as 'sports equipment,' classifiable under 9506.99.25, HTSUS and under *Lemans Corp. v. United States*, 660 F.3d 1311 (Fed. Cir. 2011) ("*Lemans*"), which differentiated articles of general apparel from articles and equipment for athletics or outdoor sports classified under 9506.99.25, holding that motorcycle jackets and pants

were more like, and properly classifiable as, general apparel, and were therefore not *prima facie* classifiable as sports equipment." Pl. Br. 6.  Plaintiff contends that its football pants, jerseys, and girdle shells resemble the hockey pants at issue in *Bauer* rather than the motorcycle jackets and pants at issue in *Lemans*, therefore justifying classification under HTSUS subheading 9506.99.20. Pl. Br. 6.  Plaintiff also contends that if the subject merchandise "are not themselves sports equipment, then they must qualify as parts or accessories to sports equipment under *Rollerblade, Inc. v. United States*, 282 F.3d 1349 (Fed. Cir. 2002)," also justifying classification under HTSUS subheading 9506.99.20. Pl. Br. 6.

Customs, on the other hand, argues that the subject merchandise does not satisfy the definition of "sports equipment" as set forth in *Lemans*. Def. Br. 8.  Customs argues that *Lemans*, alone, defines "sports equipment" for purposes of Heading 9506 and therefore rejects *Bauer* as a source of definitional authority. Def. Br. 9.  According to Customs, "*Lemans* made it clear that [Heading 9506] only covers articles that are not apparel-like, protective in nature, and have minimal textile components." Def. Br. 10.  Customs, in turn, argues that the subject merchandise is properly classified as apparel because, as imported, "the pants, jerseys, and girdles are worn over the body, do not have any protective pads, and are made up of 100% man-made textiles." Def. Br. 3-4.  Customs also maintains that "Chapters 61 and 62 do not distinguish between apparel designed for general or specific uses," such as playing football. Def. Br. 11 (citing *Lemans*, 660 F.3d at 1317).  Accordingly, Customs claims that (1) the football pants are properly

classified under HTSUS subheading 6114.30.30[2]; (2) the football jerseys are properly classified

under HTSUS subheading 6110.30.30; and (3) the football girdle shells are properly classified

under HTSUS subheading 6212.20.00.[3] Def. Br. 14-17.

The Notes to Chapters 61 and 62 provide that articles covered by Chapter 95, such as

football equipment, are not covered under Chapters 61 and 62. *See* Notes to Section XI Note 1(t)

("This section does not cover: Articles of chapter 95 (for example, toys, games, sports requisites

and nets"). The Notes to Chapter 95 provide the same exclusionary note for articles of apparel.

*See* Notes to Chapter 95 Note 1(e) ("This chapter does not cover: Sports clothing or fancy dress,

of textiles, of chapter 61 or 62").  Therefore, if the imported pants, jerseys, and girdles are

classifiable as "sports equipment" under Chapter 95, they cannot be classified as "articles of

apparel" under Chapters 61 and 62 (and vice versa).  Given that this case turns on the proper

interpretation and application of the term "sports equipment" under the HTSUS, the court will

begin by defining the applicable tariff terms and then consider whether the subject merchandise

is properly classifiable under Chapter 95.

### A. Definition of Sports Equipment under HTSUS Chapter 95

Heading 9506 provides for "[a]rticles and equipment for  . . . sports," which is referred to

in this case as "sports equipment."  The HTSUS does not define the term "sports equipment."

---

[2] Although Customs classified some of the pants under subheading 6203.43.40 at liquidation, Customs has determined that the more appropriate classification for all of the subject pants is under subheading 6114.30.30. Def. Br. 14 n.4.

[3] Although Customs classified the girdle shells under subheading 6207.19.90 at liquidation, Customs has determined that the more appropriate classification for the subject girdles is under subheading 6212.20.00. Def. Br. 16 n.5.

The Federal Circuit's definition is the only source of potentially binding authority on the scope and meaning of "sports equipment" under Heading 9506.  In *Bauer*, the Federal Circuit rejected the Court of International Trade's ("CIT") definition of "sports equipment," which defined the term as "equipment essential to the play of the game, sport, or athletic activity." *Bauer*, 393 F.3d at 1250.  More specifically, the Federal Circuit stated:

> We disagree with the Court of International Trade's reading of the material it reviewed to reach its conclusion. The Court of International Trade suggested that we held in *Rollerblade, Inc. v. United States*, 282 F.3d 1349 (Fed. Cir. 2002), that the term "equipment" meant only articles that are indispensable to the relevant sport or athletic activity. *Bauer*, 305 F. Supp. 2d at 1356. Contrary to the Court of International Trade's perception, we acknowledged only that the "definition offered for 'equipment' includes those articles that are necessary and specifically designed for use in athletics and other sports." *Rollerblade*, 282 F.3d at 1354. Because we did not use the word "only" immediately following "includes" in *Rollerblade*, we gave no opinion whether items that are not necessary but are specially designed for use in athletics or other sports constitute "equipment." The Court of International Trade also attempted to draw support from a Customs ruling, which concluded that the term equipment "includes the requisites needed in connection with the play of sports and athletics, that being the equipment essential to the play of the game, sport, or athletic activity." *Bauer*, 305 F. Supp.2d at 1356 (emphasis added by the Court of International Trade) (citing N.Y. D85049 (Dec. 14, 1998)). Again, the Court of International Trade read in the word "only" immediately following the word "includes" when there appears to be no basis for limiting sports "equipment" to only sports "requisites." As for dictionary definitions, the Court of International Trade quoted Webster's Third New International Dictionary (" Webster's "), which defined "equipment" to mean "the equipping of a person or thing" and "equip" as "to provide with what is necessary, useful or appropriate." Webster's 768 (1993). This definition provides no support for the Court of International Trade's conclusion that an item must be necessary to be equipment because the definition uses the disjunctive, "or," in the definition of "equip," not the conjunctive, "and." Because it is undisputed that Bauer's pants were specially designed and intended for use only while playing ice hockey, we hold, contrary to the Court of International Trade's conclusion, that the pants are *prima facie* classifiable under subheading 9506.99.25 as ice-hockey equipment.

*Id*. at 1250-51.  Accordingly, the Federal Circuit rejected a definition that limited "sports equipment" to articles that are "necessary" to the sport or activity and adopted (although not explicitly) a broader dictionary definition, which covers articles that are "necessary, useful or appropriate" for that sport. *Id.*  The Federal Circuit then explained that the subject merchandise (hockey pants) were *prima facie* classifiable (under GRI 3) as hockey equipment because they were "specially designed and intended for use only while playing ice hockey." *Id.* at 1251; *see also Rollerblade, Inc.*, 282 F.3d at 1354 ("*Rollerblade*") ("The definition offered for 'equipment' includes those articles that are necessary and specifically designed for use in athletics and other sports."); *Am. Astral Corp. v. United States*, 62 Cust. Ct. 563, 571(1969) ("*American Astral*") ("For the statutory designation of 'equipment' is satisfied once it is shown that the article is specially designed for use in the game or sport.").

In *Lemans*, however, the Federal Circuit clarified its definition of "sports equipment" under Heading 9506. *See Lemans*, 660 F.3d at 1318-21.  More specifically, the Federal Circuit construed the term with the benefit of the Explanatory Notes:

> In deciding that merchandise can be sports equipment as long as the goods are "useful" or "appropriate" for a sport, we did not address the extent to which the Explanatory Notes to Section 9506 clarified the meaning of the term "sports equipment," an issue we find persuasive in this case, as discussed below.
> . . . .
> In this case, the Explanatory Notes to Section 9506 indicate that, to the extent "sports equipment" encompasses articles worn by a user, those articles are not apparel-like and are almost exclusively protective in nature. We agree with the CIT's conclusion that all of the listed examples in Subsection (B) "center on non-clothing articles and do not describe apparel like the subject merchandise." CIT Decision, at 1383–84. Example 13, which is the example arguably the closest to the subject merchandise, identifies "[p]rotective equipment for sports or games, e.g., fencing masks and breast plates, elbow and knee pads, cricket pads, shin-guards." EN 95.06(B)(13). Even that example, however, refers exclusively to

items such as masks, plates, pads, and guards, and it does not reference articles that have more than minimal textile components.

. . . .

Accordingly, we find that the CIT properly looked to the Explanatory Notes to Section 9506 to assist with the interpretation of Heading 9506. The vast majority of the examples in those notes are items that a user would not wear on his or her body, but instead consist of articles that are entirely separate from the user (e.g., tennis nets, children's playground equipment, archery targets, bobsleds), held by the user in his or her hand (e.g., golf clubs, tennis rackets, polo mallets, hockey sticks), or are accessories fastened to a user (e.g., snow skis, water skis, ice skates). The few examples that a user actually would wear, which are identified in Example (13), are almost exclusively used for protection and would complement, or be worn in addition to, apparel worn for a particular sport. We therefore agree with the CIT that the Explanatory Notes distinguish the subject merchandise in this case from the goods properly classified under Heading 9506. Considering the definition of "sports equipment" as informed and clarified by these Explanatory Notes, the subject merchandise is not *prima facie* classifiable as sports equipment under Chapter 95.

*Id.* at 1319, 1320, 1321-22.  Therefore, the Federal Circuit determined that "sports equipment" is

defined as non-apparel-like merchandise that is necessary, useful or appropriate for a sport, and

if the merchandise is worn by a user, those articles are almost exclusively protective in nature

and would complement, or be worn in addition to, apparel worn for a particular sport. *See id.*[4]

### 1. Subheading 9506.99.20 (Football Equipment)

Subheading 9506.99.20 covers "Football . . .  articles and equipment . . . , except balls

and parts and accessories thereof."  The definition of "sports equipment" under Heading 9506

can be applied to the provision for "football equipment" under subheading 9506.99.20.

---

[4] To the extent Riddell views *Bauer*, *Rollerblade*, and *Astral* as arguing a "use" framework for defining "sports equipment," this court declines to endorse that interpretation of the tariff provision.  The definition of "sports equipment" set forth in *Lemans*, does not implicate use, but instead defines the term according to the physical characteristics of sports equipment.  *See Lemans*, 660 F.3d at 1319-21.

Accordingly, "football equipment" may be defined as non-apparel-like merchandise (except

balls) that is necessary, useful or appropriate for the sport of football and, if the merchandise is

worn by the user, the merchandise is protective in nature, and would complement, or be worn in

addition to, apparel worn while playing organized football.

The subheading also covers "parts and accessories thereof."  Note 3 to Chapter 95

provides that "parts and accessories which are suitable for use solely or principally with articles

of this chapter are to be classified with those articles."  HTSUS Chapter Notes to Chapter 95,

Note 3.  Although the HTSUS does not define "parts" or "accessories," the Federal Circuit

provided some explanation of the terms in *Rollerblade*, 282 F.3d at 1352.  It defined an

"accessory" as an item that "must bear a direct relationship to the primary article that it

accessorizes" *Id*.  According to the dictionary definition, an "accessory" is a "thing of secondary

or subordinate importance (as in achieving a purpose or an effect) . . . . an object or device that is

not essential in itself but that adds to the beauty, convenience, or effectiveness of something

else . . . . any of various articles of apparel (as a scarf, belt, or piece of jewelry) that accent or

otherwise complete one's costume."  Webster's Third International Dictionary at 11 (1993).

The Federal Circuit defined a "part" as an "essential element or constituent; integral

portion which can be separated, replaced, etc." *Rollerblade*, 282 F.3d at 1352 (quoting Webster's

New World Dictionary 984 (3d College Ed. 1988)).  It concluded that "the term 'part,' like the

term 'accessory,' must have a direct relationship to the primary article, rather than to the general

activity in which the primary article is used." *Id*.  In a different case, the Federal Circuit stated

that "[f]or tariff classification purposes, the mere fact that a plurality of articles may be used

together does not necessarily make each article in the plurality a constituent 'part' of a single

article. . . .  Rather, where an article performs its separate function without loss of any of its

essential characteristics, and, whether separate or joined, is complete in itself, that article is a

distinct and separate commercial entity and not 'a part.'" *ABB, Inc. v. United States*, 421 F.3d

1274, 1277 (Fed. Cir. 2005) (internal quotations omitted) (citing *United States v. Willoughby*

*Camera Stores, Inc.*, 21 CCPA 322, 324 (1933)).

## B. Definition of Apparel Under HTSUS Chapters 61 and 62

Chapters 61 and 62 generally cover "Articles of apparel and clothing and accessories."[5]

The Chapter Notes do not define the term "apparel."  The Federal Circuit, however, has defined

"wearing apparel" under Chapters 61 and 62 as "embracing all articles which are ordinarily

worn—dress in general." *Rubie's Costume Company v. United States*, 337 F.3d 1350, 1357 (Fed.

Cir. 2003) (quoting *Arnold v. United States*, 147 U.S. 494, 496 (1893)).  It "refers to clothes or

coverings for the human body worn for decency or comfort and common knowledge indicates

that adornment is also an element of many articles of wearing apparel." *Id.* (quoting *Antonio*

*Pompeo v. United States*, 40 Cust. Ct. 362 (1958)).  Within the general category of "apparel,"

Customs contends that the subject merchandise is properly classified under the following three

subheadings.

---

[5] More specifically, Chapter 61 covers "Articles of apparel and clothing accessories, knitted or
crocheted" and Chapter 62 covers "Articles of apparel and clothing accessories, not knitted or
crocheted."  HTSUS Chapters 61, 62.

*1. Subheading 6114.30.30 (for Riddell's Pants)*

Subheading 6114.30.30 covers "Other garments, knitted or crocheted: of man-made fibers: other, other: men's or boys."  The term "garments" is not defined by the HTSUS. Turning to lexicographic sources, a "garment" is defined as "an article of outer clothing (as a coat or dress) usu[ally] exclusive of accessories."  Webster's Third New International Dictionary 936 (1993).  The Explanatory Notes are more specific and state that the subheading includes "[s]pecial articles of apparel, whether or not incorporating incidentally protective components such as pads or padding in the elbow, knee or groin areas, used for certain sports or for dancing or gymnastics (e.g., fencing clothing, jockeys' silks, ballet skirts, leotards)."  Explanatory Notes to Heading 61.14 (2012).  In HQ Ruling 968013, a decision the court finds persuasive, Customs interpreted the term "certain" as limiting the scope of the subheading "to those articles of sporting apparel which, protective or otherwise, are as a general matter, worn only while engaging in the activity for which they were designed." HQ Ruling 968013 (Mar. 3, 2006). Although the subheading does not reference pants specifically, Customs has interpreted the term "special articles of apparel" to include pants worn while playing organized football. *See id.* (classifying football pants under subheading 6114.30.30); *see also* HQ Ruling 967957 (Dec. 9, 2005)  (classifying soccer goalkeeper pants under subheading 6114.30.30).

*2. Subheading 6110.30.30 (for Riddell's Jerseys)*

Subheading 6110.30.30 covers "Sweaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted: of man-made fibers: other."  The HTSUS does not define the general scope of Heading 6110 but the Explanatory Notes state that the heading covers "a

category of knitted or crocheted articles . . . designed to cover the upper parts of the body

(jerseys, pullovers, cardigans, waistcoats and similar articles).  Articles incorporating

incidentally protective components such as elbow pads sewn on sleeves and used for certain

sports (e.g., soccer goalkeeper jerseys) remain classified in this heading." Explanatory Notes to

Heading 61.10 (2012).  Therefore, Heading 6110 covers articles referred to as "jerseys."  *See*

*Lemans*, 34 CIT __, __, 675 F. Supp. 2d 1374, 1380-81 (2010).  Jerseys, in turn, are defined as

"any of various close-fitting usually circular-knitted garments: . . .  as a pullover with short or

long sleeves worn especially by children, athletes, or sailors." Webster's Third New International

Dictionary at 1214 (1993).

### *3. Subheading 6212.20.00 (for Riddell's Girdles)*

Subheading 6212.20.00 covers "Brassieres, girdles, corsets, braces, suspenders, garters

and similar articles and parts thereof, whether or not knitted or crocheted: Girdles and panty-

girdles."  The term "girdles" is also not defined by the HTSUS.  The Explanatory Notes provide

that "[t]his heading covers articles of a kind designed for wear as body-supporting garments or as

supports for certain other articles of apparel, and parts thereof. Explanatory Notes to Heading

62.12 (2012).  These articles may be made of any textile material including knitted or crocheted

fabrics (whether or not elastic). . . This heading includes, . . . . Girdles and panty-girdles. . . . All

of the above articles may be furnished with trimmings of various kinds (ribbons, lace, etc.), and

may incorporate fittings and accessories of non-textile materials (e.g., metal, rubber, plastics or

leather)." Explanatory Notes 62.12 (2012).  In HQ Ruling 957469, another decision the court

finds persuasive, Customs defined the term "girdle" under Heading 6212:

> While you are correct that the two cited definitions refer to girdles as women's undergarments, Customs must point out the following definitions from other sources:
>
> 1. Flexible, light-weight shaped corset, made partly or entirely of elastic. Worn to confine figure, especially through hip line.  From The Fashion Dictionary, by Mary Brooks Picken (1973), at page 163.
>
> 2. An elasticized flexible undergarment worn over the hips and waist. From Webster's II New Riverside University Dictionary, (1984), at page 531.
>
> Neither of these definitions identify girdles as gender specific. All of the definitions, however, indicate that girdles are undergarments.  Customs believes that currently girdles are commonly understood to be undergarments which provide support and hold in the body along the lower torso, specifically including the waist and hips.

HQ Ruling 957469 (Nov. 7, 1995).  Customs has determined, and the court agrees, that "girdles" are not gender specific. *See id.* ("Nowhere in heading 6212 or its subheadings do we find divisions based upon gender.").  Therefore, a "girdle" may be defined as an undergarment that provides support and holds in the body along the lower torso, specifically including the waist and hips.

### C. Classification of the Subject Merchandise

Although the subject merchandise is designed for playing organized football and might naturally be associated with sports equipment, under the framework set forth in *Lemans* this is not the case.  Under the *Lemans* framework, the subject merchandise does not satisfy the definition of "football equipment" under subheading 9506.99.20.  That subheading is limited to non-apparel-like merchandise and, to the extent the merchandise is worn by the user, those articles are almost exclusively protective in nature, and would complement, or be worn in addition to, apparel worn while playing organized football.  The Explanatory Notes list (among

other things) "fencing masks and breast plates, elbow and knee pads, cricket pads, shin-guards,

ice-hockey pants with built-in guards and pads" as examples of protective sports equipment.

Explanatory Notes to Heading 95.06(B)(13) (2012).  These listed items are ordinarily worn on

the body for protection.  *See Lemans,* 660 F.3d at 1320.  Articles worn on the body and

classifiable as "football equipment" would likely include the thigh, knee, hip, and tail pads that

are inserted into Riddell's pants and girdles.  *See* HQ Ruling 968013 ("[T]he foam football pad

sets are commonly and commercially recognized as protective pads for football. They are

specifically provided for by subheading 9506.99.2000, HTSUSA . . . .").  It would also likely

include shoulder pads that are worn underneath Riddell's jerseys.

Riddell's pants, jerseys and girdles, however, do not come bundled with or otherwise

incorporate any form of padding or protective inserts. *Cf. Bauer*, 393 F.3d at 1248 ("The internal

guards, pads, and belt collectively comprise about 80% of the total weight of the hockey pants.").

They are composed of textile materials and therefore do not offer much protection without the

pads. *See Lemans*, 660 F.3d at 1317 ("[T]he merchandise in this case does not contain protective

or specialized features to the same degree as the 'crash helmets' used by motorcycle and auto

racers . . . .").  The pads are separate articles entirely.  Even though Riddell's pants, jerseys, and

girdles are specifically designed to accommodate various forms of protective padding for playing

organized football, this design feature does not change their identity under the HTSUS from

"articles of apparel" to "sports equipment."  In *Lemans*, the Federal Circuit explained that "the

headings and subheadings of Chapters 61 and 62 do not distinguish between apparel designed for

general or specific uses. The fact that articles are *specialized or intended for specific purposes,*

*such as for sports, does not alone remove them from the category of apparel.*" *Lemans*, 660 F.3d at 1317 (emphasis added).

Moreover, Riddell's arguments for classifying the subject merchandise under subheading 9506.99.20 are predicated on its own alternative definition of the term "sports equipment."  For example, Riddell states that "our reading of [*Lemans*] is that the CAFC did not specifically find that where the article is required or 'indispensable' to play a particular sport that such further inquiry would be necessary.  That is, if the article is required and indispensable to playing the particular sport, as opposed to simply be designed for exclusive use in the sport, consistent  with the earlier decision in *Bauer Nike*, the article would be *prima facie* classifiable as sports equipment and a GRI 3(a) comparison with the provision for apparel would be called for." Pl. Br. 19.  Riddell, in turn, cites the National Federation of High School Associations Football Rules Book ("NFHS Rules Book") to support its argument that the subject pants, jerseys, and girdle shells, are "mandatory" football equipment (*i.e.*, items required by the rules to play football). Pl. Br. 20. According to Riddell, items required to play a particular sport are *prima facie* classifiable as "sports equipment" under *Bauer*.  This argument misconstrues the definition of "sports equipment."

Whether an article is "required" to play a given sport does not, by itself, make the article classifiable as "sports equipment" under Heading 9506.  There are other characteristics of the merchandise that must be considered to determine whether classification under Heading 9506 is appropriate.  The Federal Circuit explained this in *Lemans*, which clarified the definition of "sports equipment" as set forth in *Bauer*.  For articles worn by the user (like football pants,

jerseys, and girdles) to be classifiable as "sports equipment" under Heading 9506, they must be

protective in nature.  *See Lemans*, 660 F.3d at 1318-21.  The merchandise in *Bauer* and *Lemans*

illustrates the difference.  In *Bauer*, the hockey pants contained significant padding (80% of the

total weight) with an outer textile shell.  *See Bauer*, 393 F.3d at 1248.  They were ultimately

classified as "ice-hockey equipment" rather than "garments" under GRI 3(a). *See id* at 1252-53.

In *Lemans*, though, the motorcycle jerseys, pants, and jackets contained some padding (less than

50% of the total weight) but those articles did not have the "protective or specialized features"

that justify classification as "sports equipment" under Heading 9506. *Lemans*, 660 F.3d at 1317;

*see id.* at 1319 ("The ice-hockey pants at issue in *Bauer*, moreover, are distinguishable from the

subject merchandise.  The ice-hockey pants were constructed of a nylon or polyester textile

'shell' and had an internal assembly of hard plastic guards and foam padding.  Accordingly, they

were much more like the examples of pads and guards listed in EN 95.06(B)(13), the subsection

of the Explanatory Notes that the CIT distinguished from the subject merchandise in this case.")

(internal citation omitted).  The *Lemans* merchandise was classified as "apparel" under GRI 1.

*Id.* at 1317.  Riddell's merchandise, by contrast, contains <u>no protective padding</u> and therefore

lacks the protective features that might justify classification as "football equipment" under

subheading 9506.99.20.[6]

---

[6] Riddell makes a separate argument that the subject merchandise is *prima facie* classifiable
under subheading 9506.99.20 based on a principal use analysis.  For example, Riddell applies the
*Carborundum* factors to demonstrate that the subject merchandise is used to play organized
football and therefore classifiable as "football equipment" under subheading 9506.99.20. Pl. Br.
24-26 (citing *United States v. Carborundum Co.*, 63 CCPA 98, 102, 536 F.2d 373, 377 (1976)).

Riddell also argues that its jerseys, pants, and girdles are "parts and accessories" of football equipment and therefore properly classified under subheading 9506.99.20. Pl. Br. 26. This argument is also unpersuasive.  It changes the analysis and assumes that the protective pads are "football equipment" and Riddell's jerseys, pants, and girdles are "parts and accessories thereof." Generally speaking, "parts and accessories" "must have a direct relationship to the primary article, rather than to the general activity in which the primary article is used." *Rollerblade*, 282 F.3d at 1353.  Here, the subject merchandise is specifically designed to accommodate football pads, which demonstrates that the two types of merchandise are designed to be used together.  This, however, is not the type of relationship that would lead the court to classify the subject merchandise as "parts and accessories" of football pads.

A "part" is defined as an "essential element or constituent; integral portion which can be separated, replaced, etc. *Id*.  Moreover, the "mere fact that a plurality of articles may be used together does not necessarily make each article in the plurality a constituent 'part' of a single article. . . .  Rather, where an article performs its separate function without loss of any of its

---

As Customs notes in its reply brief, none of the tariff provisions under review are governed by use. Def. Reply Br. 3, 7-8.  They are *eo nomine* provisions. A use analysis is not appropriate for these *eo nomine* tariff provisions.  *See Carl Zeiss*, 195 F.3d at 1379 ("[A] use limitation should not be read into an *eo nomine* provision unless the name itself inherently suggests a type of use.").  Indeed, the Federal Circuit did not undertake a principal use analysis in *Lemans*, the most recent and authoritative case on the scope and meaning of "sports equipment" under the HTSUS.  Accordingly, the court will not read use into the *eo nomine* tariff provision for "sports equipment."  Riddell's application of the *Carborundum* factors is therefore misplaced.  *See BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1377 (Fed. Cir. 2011) ("[T]hose factors are typically used to establish whether merchandise falls within a particular class or kind for purposes of a principal use analysis.").  Some of Riddell's arguments implicate GRI 3 but classification under GRI 3 is unnecessary in this case because the subject merchandise can be properly classified under GRI 1.  *See Telebrands Corp.*, 865 F. Supp. 2d at 1280.

essential characteristics, and, whether separate or joined, is complete in itself, that article is a

distinct and separate commercial entity and not 'a part.'" *ABB, Inc.*, 421 F.3d at 1277 (internal

quotations and citations omitted).  In this case, the pants, jerseys, and girdles are not constituent

parts or essential elements of football pads.  Each of the subject articles is a stand-alone product

capable of functioning independently, *i.e.*, the pants, jerseys, and girdles can be worn without the

pads.  Although the two types of merchandise—the pants, jerseys, girdles <u>and</u> football pads—are

designed to be used together, that does not transform the subject merchandise into unassembled

"parts" of football pads.  Riddell's pants, jerseys, and girdles are "distinct and separate"

commercial entities.  *See id.*

Alternatively, an "accessory" is defined as thing of secondary or subordinate importance

(as in achieving a purpose or an effect) . . . . an object or device  that is not essential in itself but

that adds to the beauty, convenience, or effectiveness of something else . . . . any of various

articles of apparel (as a scarf, belt, or piece of jewelry) that access or otherwise complete one's

costume." Webster's Third International Dictionary at 11 (1993).  Classification of the subject

merchandise as "accessories" is also inappropriate.  The subject merchandise is designed to

cover the body and provide comfort and support just like other articles of apparel that are

specially designed for sports.  The pads add protection.  Each serves a separate function and

neither is secondary or subordinate to the other.  Accordingly, Riddell's merchandise is not

properly classifiable as "parts and accessories."

Riddell's pants, jerseys, and girdle shells are properly classified as "articles of apparel"

under Chapters 61 and 62.  There is no dispute that the subject merchandise is worn on the body

and composed entirely of textile material.  Riddell's merchandise, therefore, can best be described as apparel-like articles specially designed for playing organized football.  Specifically, Riddell's jerseys are short-sleeved pullovers made of knit mesh (100% polyester), which satisfies the definition of jerseys as "usually circular-knitted garments . . .  a pullover with short or long sleeves worn especially by . . . ., athletes." Webster's Third New International Dictionary at 1214 (1993).  Riddell's jerseys are therefore classifiable under subheading 6110.30.30.  Riddell's pants are also made of polyester, worn on the lower body, and fall just below the knee area with tight elastic closures to maintain a close fit.  They constitute "special articles of apparel" worn while playing football and therefore classifiable under subheading 6114.30.30. *See* HQ Ruling 968013 (recognizing football pants to be special articles of apparel for playing football and therefore classifiable under subheading 6114.30.30); *see also* Explanatory Notes to Heading 61.14.  Likewise, Riddell's girdle shells are made of polyester and worn around the pelvic area underneath football pants.  They satisfy the definition of girdles, which are defined as undergarments that provide support and hold in the body along the lower torso, specifically including the waist and hips.  As noted by Customs, classification of the subject girdle shells is more appropriate under subheading 6212.20.00 (girdles) rather than under subheading 6207.19.90, which covers "underpants and briefs." *See* HTUS subheading 6207.19.90.  Riddell's girdle shells have the characteristics of an athletic girdle, not underwear, and are therefore classifiable under subheading 6212.20.00.

It is only after the pads are inserted into the pants and girdles (or under the jerseys) that the subject merchandise could be said to offer any real protection.  This, though, has no bearing

on proper classification given that merchandise is classifiable in its condition as imported (*i.e.*, without pads).  *See, e.g., Simod Am. Corp. v. United States*, 872 F.2d 1572, 1577 (Fed. Cir. 1989) ("It is a principle of Customs law that imported merchandise is dutiable in its condition as imported . . .") (citing *United States v. Citroen*, 223 U.S. 407 (1912)).

### IV. CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of Defendant. Judgment will be entered accordingly.

Dated:  March 20, 2013                                      /s/ Judith M. Barzilay
       New York, NY                                    Judith M. Barzilay, Senior Judge

UNITED STATES COURT OF INTERNATIONAL TRADE

RIDDELL, INC.,

        Plaintiff,

        v.

UNITED STATES,

        Defendant.

Before: Judith M. Barzilay, Senior Judge

Consol. Court No. 09-00416

## **JUDGMENT**

Upon consideration of the cross-motions for summary judgment filed by Plaintiff Riddell, Inc., and Defendant U.S. Customs and Border Protection ("Customs") concerning the classification of certain football jerseys, pants, and girdle shells, and all other papers filed in this action, and upon due deliberation, it is hereby

    **ORDERED** that Plaintiff's motion for summary judgment is denied; it is further

    **ORDERED** that Defendant's cross-motion for summary judgment is granted; and it is further

    **ORDERED** that the subject jerseys are properly classified under HTSUS subheading 6110.30.30; the subject pants are properly classified under HTSUS subheading 6114.30.30; and the subject girdle shells are properly classified under HTSUS subheading 6212.20.00.

Dated:  March 20, 2013
      New York, NY

          /s/ Judith M. Barzilay
        Judith M. Barzilay, Senior Judge